# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SHANEL PROCTOR, 1st St. and K St. NE, Washington, D.C., 20002, and CHARLAINE BRAXTON, 1st St. and L St. NE, Washington, D.C., 20002, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | |
| *Plaintiffs,* | ) ) | **CLASS COMPLAINT FOR** |
| *v.* | ) ) | **INJUNCTIVE AND DECLARATORY RELIEF** |
| DISTRICT OF COLUMBIA; MURIEL BOWSER, Mayor of the District of Columbia, in her official capacity, 1350 Pennsylvania Avenue, NW, Washington, D.C. 20004, | ) ) ) ) ) | Civil Case No. 1:18-cv-00701 |
| *Defendants.* | ) ) | |

**CLASS COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

**INTRODUCTION**

1.       ***"I have very little, as is. Please try to restrain from taking any more."*** *See* Ex. 1.

2.       On June 28, 2016, this handwritten sign was visibly posted at the outdoor residence of a homeless person at K Street NW near 26th Street NW in the District of Columbia. Despite this resident's plea, and in violation of the District's procedures and the Fourth Amendment of the United States Constitution, the District summarily destroyed the resident's property during an operation known as an "encampment clearing."

3.       Plaintiffs Shanel Proctor and Charlaine Braxton are presently experiencing homelessness. They—and the class that they seek to represent—reside in outdoor "encampments" in the District of Columbia.

4.       Upon information and belief, since November 2016, the District has conducted at least 70 encampment "clearings." At these clearings, District personnel remove from public lands shelters such as tents, along with other personal belongings of homeless residents. On information and belief, the District regularly conducts clearings and will continue to do so going forward.

5.       Encampment clearings are governed by the District of Columbia Protocol for the Disposition of Property Found on Public Space and Outreach to Displaced Persons (the "Protocol"), a copy of which is attached as Exhibit 2. The Protocol requires that the District temporarily store certain belongings found at encampment sites during clearings, including important documents, bicycles and tents, as well as items designated by residents for retention. The Protocol requires temporary storage of such items for 60 days regardless of whether the owner is present so that they may be claimed by their owner. *See* Ex. 2, Protocol, Part VI.

6.    The District has failed to comply with the Protocol and is conducting clearings that run afoul of the Fourth Amendment. Instead, it has followed a consistent practice of destroying unattended belongings whenever the owner is absent for some or all of a clearing. The District has destroyed homeless residents' tents and other shelters, bicycles, blankets, clothing, identification documents, medications, Social Security cards, medical and court records, family photographs, letters, and other personal belongings.

7.    The District's practice of destroying the unattended personal effects of homeless encampment residents violates the Fourth Amendment, which protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures."

8.    As a result of the District's practice, Plaintiffs are in grave danger of suffering irreparable harm through loss of personal property that is necessary for survival or that cannot be replaced.

9.    Plaintiffs seek a preliminary injunction prohibiting the application of the unconstitutional practice until this litigation is resolved, and further request that the Court issue a permanent injunction barring the District from clearing encampments in the manner complained of herein.

## JURISDICTION AND VENUE

10.    This case arises under the United States Constitution and 42 U.S.C. § 1983.

11.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

12.    Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in the District of Columbia.

## PARTIES

**Named Plaintiffs**

13.     Plaintiff Shanel Proctor is a resident of the District of Columbia. She resides at an encampment near 1st Street NE and K Street NE.

14.     Plaintiff Charlaine Braxton is a resident of the District of Columbia. She resides at an encampment near 1st Street NE and L Street NE.

**Defendants**

15.     Defendant District of Columbia is a municipality created by the United States Congress and endowed with authority to enforce local laws.

16.     Defendant Muriel Bowser is the Mayor of the District of Columbia and has been named as a defendant in her official capacity. As mayor, she directs the District's agencies, including the District's Department of Human Services ("DHS"), the Department of Behavioral Health ("DBH"), and the District's Department of Public Works ("DPW"). Mayor Bowser is responsible for the District's administration of its laws and policies, including those regarding the clearing of homeless encampments in the District.

## SPECIFIC ALLEGATIONS

**I.    PLAINTIFFS RESIDE IN ENCAMPMENTS THROUGH THE DISTRICT OF COLUMBIA.**

17.    Across the District, homeless residents maintain individual or group encampments in parks, under bridges, along sidewalks, and in other places offering shelter, security, and community.

18.    On information and belief, approximately 897 people resided in encampments in the District in 2017.[1]

19.    Like District residents with permanent housing, encampment residents leave their property unattended during the day to go to work or other appointments, to use toileting facilities (i.e., showers and restrooms), seek medical attention, or find food. When absent, these residents secure their personal property to the best of their ability. For example, homeless residents may store their belongings in tents, clothing, plastic bags, carts, and luggage.

20.    Ms. Proctor keeps her personal property near 1st Street NE and K Street NE, including a tent, hygiene products, and blankets. Ms. Proctor's property may be stored out of sight when she steps away from her tent.

21.    Ms. Braxton keeps her personal property at 1st Street NE and L Street NE, including a tent, medication, healthcare documents, food and clothing, a computer, toiletries, bedding, and a suitcase. Ms. Braxton's property may be stored out of sight when she steps away from her tent.

---

[1] The U.S. Department of Housing and Urban Development, Office of Community Planning and Development, The 2017 Annual Homeless Assessment Report (AHAR) to Congress, at 80 (enumerating the unsheltered homeless population), *available at*: https://www.hudexchange.info/resources/documents/2017-AHAR-Part-1.pdf (last visited Mar. 28, 2018).

22.     The District conducts regular clearings of encampments, during which it disposes

of homeless residents' tents and other shelters, bicycles, blankets, clothing, identification

documents, medications, social security cards, medical and court records, family photographs,

letters, and other personal belongings.

23.     If a homeless resident is not present for the entirety of a clearing, the District

routinely destroys that resident's belongings, even when they pose no threat or risk, and even

when, in some cases, the belongings are set aside for safekeeping.

24.     On information and belief, these clearings will continue absent judicial

intervention.

## II.     THE DISTRICT'S ENCAMPMENT PROTOCOL REQUIRES STORAGE, INCLUDING STORAGE OF IMPORTANT DOCUMENTS, FUNCTIONAL BICYCLES AND TENTS, AND ITEMS DESIGNATED BY RESIDENTS.

25.      The District's procedures for encampment clearings are governed by the

Protocol.

26.     When the District conducts an encampment clearing, it sends at least one DPW

garbage truck and DPW personnel, who, on information and belief, are overseen by DHS

personnel. The Deputy Mayor for Health and Human Services ("DMHHS") is "[r]esponsible for

providing oversight of DHS to monitor adherence to [the] Protocol." Ex. 2, Protocol, Part III.

27.     The District of Columbia defines an "encampment" as "a set-up of an abode or

place of residence of one or more persons on public property or *an accumulation of personal*

*belongings that is present* even when the individual may not be."[2]

28.     The Protocol mandates that the District "shall retain and store all [of an

encampment resident's] items that are able to be contained within . . . two 40-gallon storage

_____

[2] Encampments, Office of the Deputy Mayor for Health and Human Services (emphasis added), *available at*: https://dmhhs.dc.gov/page/encampments (last visited Mar. 28, 2018).

boxes/bins" for a period of 60 days, with enumerated exceptions for live animals, "wet or heavily

soiled" or bug-infested items, foods and liquids, illegal items, and explosives. Ex. 2, Protocol,

Part VI.C.

29.    The Protocol specifically provides that the District "shall not discard":

> Any form of personal identification, including driver's licenses and
> passports; Social Security cards; photographs; financial, legal, or
> medical documents; or other documents of importance;

> Any fully assembled and operational bicycle or non-motorized
> means of transportation;

> Any functional tent that requires storage; or

> Any permissible belongings designated by an individual for
> storage within the two provided 40-gallon box/bins, whether
> through placement in the box/bins, in black trash bags, or through
> other reasonable written or oral means.

Ex. 2, Protocol, Part VI.C.

## III.    THE DISTRICT DESTROYS UNATTENDED PERSONAL BELONGINGS IN VIOLATION OF THE PROTOCOL'S REQUIREMENTS.

30.    The District regularly fails to preserve personal belongings that are unattended at

the time of an encampment clearing.

31.    Such unattended belongings are treated as abandoned and are destroyed, in

violation of the mandatory storage requirements of the Protocol, even where the District knows

that they are not in fact abandoned. As a District official recently explained, "If things are left

unattended, the City treats those as if it's [sic] disposed property."[3]

---

[3] *Homeless Swept Up in America's Capital Clean-Up*, BBC News, Mar. 7, 2018, at 2:56–3:01
(interview with Carter Hewgley, D.C. Department of Human Services), *available at*:
http://www.bbc.com/news/av/world-us-canada-43262949/homeless-swept-up-in-america-s-
capital-clean-up.

32. The District's practice of summarily destroying unattended belongings pre-dates the Protocol's issuance. Exhibit 1 shows a photograph taken prior to an encampment hearing at K Street NW near 26th St NW on June 28, 2016. The resident left a handwritten sign stating, "I have very little, as is. Please try to restrain from taking any more." Despite the resident's pleas, his property was destroyed by the District. As this incident demonstrates, property is not "abandoned" simply because the owner is not present at the time of the clearing.

33. On August 2, 2016, the District destroyed Ms. Proctor's tent, mattress, food and clothing, portable TV, birth certificate, ID, social security card, and a court document. Declaration of Shanel Proctor ¶ 5.

34. The District's adoption of the Protocol in November 2016 did nothing to halt the destruction. On March 28, 2017, the District cleared an encampment located near K Street NW and New Jersey Avenue NW. The District destroyed all unattended tents and property, notwithstanding assertions by numerous residents that the property was still in use by other residents.

35. On April 13, 2017, the District conducted a clearing near 2nd Street NE and K Street NE. According to District records, during this clearing, "all tents that had not been moved was [sic] discarded." Later that same day, a District employee received a phone call from the owner of unattended belongings that had been destroyed. The District employee "reminded him that the cleanup was scheduled to take place and that it was his responsibility to either take his belongings with him or wait with his things." Ex. 3., Report of DHS Employee Melvyn Smith.

36. In early May 2017, during an encampment clearing, the District seized all of Ms. Braxton's property, including her tent, food, clothing, and electronics, while she briefly was absent from her tent. Ms. Braxton was only able to later recover one duffel bag and some

electronics. On information and belief, her tent was destroyed.  Declaration of Charlaine Braxton ¶ 5.

37.    On May 11, 2017, the District cleared an encampment on L Street NE between 1st and 2nd Streets NE.  A homeless couple previously known to District officials resided at the clearing site and were present at the beginning of the clearing. Nevertheless, District personnel destroyed the couple's belongings after the couple "walked away from their property." Ex. 4, Report of DBH Employee Judy Williams.

38.    On May 18, 2017, on L Street NE between 1st and 2nd Streets NE, District personnel destroyed three tents deemed to be "abandoned and owner un-identifiable." Ex. 5, Report of DHS Employee Melvyn Smith.

39.    On June 20, 2017, prior to an encampment clearing in the NoMa area, a District employee "attempted to contact . . . by phone" a resident whose tent was present at the clearing site. When "[h]e did not answer . . . his tent and belongings were discarded." Ex. 6, Report of DBH Employee Judy Williams.

40.    On June 22, 2017, District personnel observed a resident "walking away" from her encampment at 2nd and L Streets NE. District personnel proceeded to clear the area, including destruction of the resident's property. Upon her return, the resident "became agitated." She "attempted to pull items out of the [garbage] truck stating that her property had been discarded." Although District personnel ultimately removed the resident's tent from the garbage truck, the resident was not able to find certain items missing from the tent. Ex. 7, Report of DBH Employee Judy Williams.

41.    On September 28, 2017, the District cleared an encampment located near 2nd and M Streets NE. One resident had carefully moved his property away from the core encampment

onto an open grass patch. The resident's property was well-organized and clean, and included a fully functional tent. District personnel destroyed all of this property.

42.     On October 3, 2017, District personnel destroyed one unattended tent on K Street NE between 1st and 2nd Streets NE and another on M Street NE near 2d Street NE in the NoMa area. Ex. 8, Report of DHS Employee Melvyn Smith.

43.     On October 26, 2017, during a clearing near 1st and H Street NE, one resident informed District personnel that certain belongings belonged to her "neighbors" at the encampment site, who had "left their items there." District personnel destroyed those unattended belongings. Ex. 9, Report of DBH Employee Judy Williams.

44.     On November 2, 2017, the District cleared an encampment located near 20th Street NW and E Street NW. The District destroyed all unattended property, including tents, notwithstanding numerous assertions by residents that the property was still in use by other residents.

45.     On December 21, 2017, District personnel destroyed at least 5 unattended tents on M Street NE, L Street NE, and K Street NE between 1st and 2nd Streets NE in the NoMa area. Ex. 10, Report of DBH Employee Judy Williams.

46.     The District's encampment clearing practice remains in effect, and on information and belief, it will continue to be followed in the future.

## IV.     THE DISTRICT'S PRACTICE IRREPARABLY HARMS HOMELESS RESIDENTS.

47.     Defendants' practice of summarily destroying unattended personal property of homeless encampment residents will inflict irreparable harm upon Plaintiffs and those similarly situated absent judicial intervention.

48.    Ms. Braxton fears the District's homeless encampment clearing practices will result in further destruction of her property. Ms. Braxton cannot afford to replace her belongings if they are destroyed again. She could freeze in the cold and would have no privacy without her tent. Ms. Braxton has unsuccessfully tried to obtain a place in a shelter in the past; she would have nowhere to go without her tent.

49.    Ms. Proctor fears the District's homeless encampment clearing practices will result in further destruction of her property. She would have nowhere to go if her tent is destroyed, and does not have enough money to buy a new tent.

50.    In sum, Plaintiffs and similarly situated homeless residents face the imminent threat of losing:

  a)    <u>Life-preserving property.</u> Plaintiffs' tents, blankets, and clothing are critical property necessary for day-to-day survival.

  b)    <u>Important official documents necessary to access employment, benefits, and other services.</u> These documents include personal identifications, medical records, legal documents, and other official correspondence.

  c)    <u>Items of sentimental value.</u> Childhood and family photographs, documents and other personally significant possessions have intrinsic value that cannot be replaced or recompensed.

51.    Plaintiffs' prior losses of property and their continued residence in encampments give rise to a demonstrable risk of imminent irreparable harm.

## CLASS ALLEGATIONS

52.    Plaintiffs bring this action on behalf of themselves and all other persons similarly situated to certify an injunctive class pursuant to Federal Rule of Civil Procedure 23(b)(2). The proposed class is defined as follows:

> All homeless persons who (i) reside at an abode or place of residence of one or more persons on public property or (ii) possess an accumulation of personal belongings that is present even when the individual may not be present at the location, where such public property or location is subject to District of Columbia, rather than federal, government oversight.

53.    The members of the class are so numerous that joinder is impossible. There are hundreds of homeless persons who reside in the District of Columbia in locations subject to District oversight and who may suffer future loss of property under the District's practice.

54.    There are questions of law and fact common to the putative class, including whether Defendants' practices violate the Fourth Amendment to the United States Constitution.

55.    Plaintiffs' claims are representative of the class. Plaintiffs and the class of individuals they seek to represent reside in the District of Columbia in locations subject to District oversight and risk having their belongings destroyed by Defendants. The legal claims raised by Plaintiffs are identical to the class claims.

56.    Plaintiffs are adequate representatives of the putative class. They bring this action to seek the same relief as the other members of the class; namely, that Defendants be enjoined from summarily destroying unattended personal property of homeless encampment residents during clearings. Plaintiffs have no interests adverse to those of the class as a whole.

57.    The proposed class would be represented by counsel from Covington & Burling LLP. Counsel have experience litigating class action lawsuits and seeking redress for constitutional violations.

58.     Defendants have acted on grounds generally applicable to the class by violating the Fourth Amendment to the United States Constitution in their treatment of class members. Thus, injunctive and declaratory relief is appropriate with respect to the class as a whole.

59.     Class members are in danger of irreparable injury because, absent an order from this Court, they face the imminent threat of having their personal property destroyed in violation of constitutional protections. Such destruction would irreparably harm class members.

## CAUSE OF ACTION

### Count I
### Unreasonable Seizure
### (Fourth Amendment to the United States Constitution; 42 U.S.C. § 1983)

60.     All of the foregoing allegations are repeated and realleged as though fully set forth herein.

61.     Under the Fourth Amendment of the United States Constitution, Defendants must guarantee the right of Plaintiffs and those similarly situated to be free from unreasonable seizures.

62.     Acting under color of the laws of the District of Columbia, Defendants have implemented a policy, practice,  or custom of systematically destroying unattended personal belongings of homeless individuals. In particular, Defendants have destroyed unattended belongings rather than storing them in accordance with the requirements of the Protocol.

63.     Defendants' policy, practice, or custom effectuates an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

64.     Defendants' policy, practice, or custom threatens to inflict imminent and irreparable harm upon Plaintiffs and those similarly situated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

a.   Certify this case as a class action lawsuit, appoint Plaintiffs as class representatives, and appoint the undersigned counsel as class counsel;

b.   Issue a preliminary injunction enjoining Defendants from unreasonable seizures that take the form of destroying the unattended personal belongings of homeless residents during encampment clearings in the District of Columbia, rather than storing them as required by the Part VI.C of the Protocol;

c.   Enter a declaratory judgment that Defendants' practice of destroying the unattended personal belongings of homeless residents during encampment clearings in the District of Columbia, rather than storing them as required by the Part VI.C of the Protocol, violates Plaintiffs' rights under the Fourth Amendment of the United States Constitution;

d.   Issue a permanent injunction enjoining Defendants from destroying the unattended personal belongings of homeless residents during encampment clearings in the District of Columbia, rather than storing them as required by the Part VI.C of the Protocol;

e.   Award Plaintiffs' counsel reasonable attorneys' fees, expert and consulting fees, and costs under the Equal Access to Justice Act, and any other applicable statute or regulation; and

f.   Grant such further relief as the Court deems just, equitable, and appropriate.

Dated: March 28, 2018

Respectfully submitted,

/s/ Victor D. Ban

Sarah L. Wilson (D.C. Bar No. 443350)
Ross A. Demain (D.C. Bar. No. 995043)
Jon-Michael Dougherty (D.C. Bar No. 1032660)
Victor D. Ban (D.C. Bar No. 1027211)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001–4956
(202) 662-6000