# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHANEL PROCTOR *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA *et al.*, <br><br> Defendants. | Case No. 1:18-cv-00701 (TNM) |

# **MEMORANDUM AND ORDER**

Plaintiffs Shanel Proctor and Charlaine Braxton, two homeless residents of the District of Columbia, are suing the City, Mayor Muriel Bowser, and Deputy Mayor HyeSook Chung (collectively, "the District") under 42 U.S.C. § 1983 and the Fourth and Fifth Amendments to the Constitution. They seek an order instructing the District to temporarily store unattended belongings of homeless residents, rather than immediately destroying them. The Court already denied the Plaintiffs' Motions for a Preliminary Injunction and for Class Certification. *See Proctor v. District of Columbia*, 310 F. Supp. 3d 107, 118 (D.D.C. 2018). The Plaintiffs filed an Amended Complaint, and the District moved to dismiss. Although a preliminary injunction requires a plaintiff to make a clear showing of a likelihood of success on the merits, a plaintiff must only state a claim to relief that is plausible on its face to survive a motion to dismiss. Given the relaxed standard of review at this stage and the fact-bound nature of the claims at issue, the Court will largely deny the District's Motion to Dismiss.

# I. BACKGROUND

The District of Columbia has adopted a Protocol for the Disposition of Property Found on Public Space and Outreach to Displaced Persons. Am. Compl. Ex. 2, ECF No. 32-7. The District issued this Protocol to address security, health, and safety concerns for both homeless residents and the public generally. *See Proctor*, 310 F. Supp. 3d at 110. As further detailed in *Proctor*, the Protocol requires the District to temporarily store certain items found at encampment sites during clearings: important documents, bicycles, tents, or "any permissible belongings designated by an individual for storage within the two provided 40-gallon box/bins, whether through placement in the box/bins, in black trash bags, or through other reasonable or oral means." Am. Compl. Ex. 2 at Part VLC. Before the District clears an encampment, the Protocol requires officials to post a written notice nearby. Am. Compl. ¶ 5. The notice explains that certain items—such as items marked for storage and items of obvious value—will be stored but that "[a]ll other items visible from this location and not removed from this public space by the above-stated scheduled cleanup time are subject to removal and disposal." *Id.* ¶ 38.

The Plaintiffs allege that the District, in practice, "deems" property as abandoned if the owner is absent at the time of the clearing and he had not told anyone that he wants his belongings stored. Am. Compl. ¶ 51. And the District "deems" property abandoned "if the owner leaves after the clearing team is already on site." *Id.* ¶ 52. According to Ms. Proctor, the District destroyed her tent, mattress, birth certificate, Social Security card, and other belongings while she was getting food and charging her phone at Harris Teeter. Decl. of Shane Proctor 1, ECF No. 32-5.

According to Ms. Braxton, the District took her belongings, as well. Decl. of Charlaine Braxton ¶ 18, ECF No. 32-6. Ms. Braxton claims that even though the District had posted a

notice about a scheduled clearing, the clearing did not happen at that time. *Id.* ¶¶ 9-10. She later spoke to outreach workers and heard that while "certain garbage could be thrown away, other belongings would be stored . . . ." *Id.* ¶ 10. She states that she told the workers that she wanted her things kept. *Id.* The next day, she left her tent and belongings and told her neighbors that she would be back, but her items were gone when she returned. *Id.* ¶¶ 13; 18. She insists that she went to the District storage facility, but she found only some of her belongings. *Id.* ¶ 18.

The Plaintiffs seek both declaratory and injunctive relief. They ask for a declaratory judgment rendering the District's practice of destroying the unattended belongings of homeless residents unconstitutional under the Fourth and Fifth Amendments. Am. Compl. at 26. And they seek a permanent injunction against the District from destroying unattended belongings of homeless residents. *Id.*

## II. LEGAL STANDARDS

A party may move to dismiss a complaint because it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). And "[i]n determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (internal citation omitted).

Under Federal Rule of Civil Procedure 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. The parties invoking the court's jurisdiction bear the burden of establishing standing. *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). When facing a motion to dismiss under Rule 12(b)(1), they "must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (cleaned up). To establish their standing, plaintiffs must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

### III. ANALYSIS

**A. The Plaintiffs Have Adequately Alleged Standing**

There is no dispute that the Plaintiffs meet the typical "case or controversy" requirements of Article III of the Constitution. The question is whether they have standing to obtain injunctive relief. The District argues that the Plaintiffs lack standing to seek prospective injunctive relief because they do not allege a real and immediate threat to their constitutional rights. Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 26, ECF No. 39. The Plaintiffs insist that they do face the risk of imminent injury absent judicial relief because they will likely be subjected to clearings in the future, given the history of District clearings. Pls.' Opp'n to Defs.' Mot. to Dismiss 17 ("Pls.' Opp'n"), ECF No. 41.

"In order to obtain such an injunction, a plaintiff cannot simply allege that he was previously subjected to the defendant's actions." *D.C. Common Cause v. District of Columbia*, 858 F.2d 1, 8 (D.C. Cir. 1988). Plaintiffs seeking injunctive relief must show that they are in

4

immediate danger of sustaining some direct injury in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). Past exposure to illegal conduct is not in itself enough. *Id.* at 102.

The Plaintiffs have alleged a real and immediate threat of a violation of their constitutional rights. As the District acknowledges, Ms. Proctor and Ms. Braxton both claim that they still keep their personal property in areas that have been subject to several District clearings. And the District has conducted over 100 clearings since November 2016, and they continue to do so. Even though the Plaintiffs have not faced another clearing, they have alleged enough facts to establish at the dismissal stage that they are in immediate danger of another allegedly unconstitutional clearing. *See LaRoque v. Holder*, 650 F.3d 777, 788 (D.C. Cir. 2011) (holding that a candidate for public office had standing to challenge an allegedly unlawful election 19 months away); *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59 (1975) (noting that the "usual basis for injunctive relief" is "some cognizable danger of recurrent violation").

### B. The Plaintiffs Have Adequately Alleged a Fourth Amendment Violation

The District asserts that the Fourth Amendment is irrelevant here because the Plaintiffs' property was abandoned when the District destroyed it. Defs.' Mem. at 6-7. The Plaintiffs respond that the Fourth Amendment does apply and that even though their property was unattended, it was not abandoned. Pls.' Opp'n at 2. The Plaintiffs have the better of the argument.

As the Court has already explained, "destroying property meaningfully interferes with an individual's possessory interest in that property." *Proctor*, 310 F. Supp. 3d at 114 (quoting *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 209 (3d Cir. 2001)). Even so, seizure of property that has been "abandoned" does not violate the Fourth Amendment. *United States v. Thomas*, 864 F.2d 843, 845 (D.C. Cir. 1989). To determine whether there is abandonment, the Court must

5

focus on the intent of the person who is alleged to have abandoned the property. *Id.* at 846. Because this is an objective test, intent may be inferred from "words spoken, acts done, and other objective facts." *Id.* Under 42 U.S.C. § 1983, the Plaintiffs may sue the District for constitutional violations caused by the District's "policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

The Plaintiffs have alleged sufficient facts to suggest that their property was not abandoned when it was taken. Ms. Braxton alleges that she told both District employees and her neighbors that she wanted to keep her belongings. Braxton Decl. ¶¶ 12, 14. Ms. Braxton admits that she left her property unattended, but she alleges that the notice that the District posted gave the wrong date for the street clearing. *Id.* ¶ 8. As to Ms. Proctor, she alleges that the District destroyed her property when it was unattended. Proctor Decl. ¶ 5. The parties dispute whether it was reasonable for District employees to believe the Plaintiffs' property was abandoned, but that is a factual inquiry inappropriate for this stage.

The Plaintiffs also allege that the unconstitutional seizure of their property took place under a custom of the District of Columbia that is actionable under Section 1983. There is a "tension" between the District's Protocol and its practice, at least as described by the Plaintiffs. *See Proctor*, 310 F. Supp. 3d at 111. The District has an express municipal policy and practice of clearing abandoned property, but the real question seems to be whether the Plaintiffs have alleged sufficient facts to show that the District has a custom of destroying unattended—but not abandoned—property.

The Plaintiffs allege that the District "deems" property as abandoned if the owner is absent when the clearing happens and does not tell anyone that he wants his belongings stored. Am. Compl. ¶ 51. And the District "deems" property abandoned "if the owner leaves after the

6

clearing team is already on site." *Id.* ¶ 52. The Plaintiffs suggest that the District's signage misleads homeless residents about how the District will treat certain unattended items. The Plaintiffs cite to the District's own reports from street clearings. *See, e.g.*, *id.* ¶ 55. In response, the District insists that the examples discussed in the Amended Complaint show that it discards only abandoned property. *See* Defs.' Mem. at 16-17.

Again, this is a fact-intensive inquiry. At this point, the Plaintiffs have sufficiently alleged that the District has a custom of treating unattended property as abandoned and destroying it.[1] For example, if the District has a *de facto* practice of treating all property as abandoned if the owner walks away during the clearing—ignoring all other factors—then that may be an unconstitutional custom. Or if the District destroys all unattended property unless a neighboring resident objects, that may also be an unconstitutional custom. The record contains many "terse and often cryptic cleanup reports, many of which do not state whether the District had indicators of abandonment beyond the simple fact that property was unattended." *Proctor*, 310 F. Supp. 3d at 115 n.4. And the Amended Complaint now alleges that at least Ms. Proctor was misled by a posted notice and District outreach workers. Am. Compl. ¶ 61-63.

The District may well be able to show after discovery that its abandonment determinations are reasonable. But at this stage, the Court must construe the Amended

---

[1] The Plaintiffs also assert that they have sufficiently pleaded municipal liability based on policymaker action. Pls.' Opp'n at 12. Even if Mayor Bowser and Deputy Mayor Chung are the relevant final policymakers, the Plaintiffs have alleged no particular "action of a policy maker within the government" that would warrant municipal liability. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). The Plaintiffs have alleged no facts to support a claim that these officials have, for example, instructed, encouraged, or even allowed District personnel to consider property abandoned if it is simply left unattended. Rather, the Plaintiffs have alleged that there is a "persistent, pervasive practice" of District officials of seizing unattended—but not abandoned—property. *See Coleman v. District of Columbia*, 828 F. Supp. 2d 87, 92 (D.D.C. 2011) (quoting *Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir. 1986)).

Complaint in the light most favorable to the Plaintiffs and accept as true all reasonable factual inferences drawn from well-pleaded allegations. *See In re United Mine Workers*, 854 F. Supp. at 915. Given this plaintiff-favoring standard, the Court finds that the Plaintiffs have adequately alleged their Fourth Amendment claim.

### C. The Plaintiffs Have Adequately Alleged a Fifth Amendment Violation

The District argues that the Plaintiffs fail to state a Fifth Amendment claim because they have no property interest in abandoned property. Defs.' Mem. at 10. The District also asserts that it provides sufficient notice before it collects property. *Id.* The Plaintiffs insist that their destroyed property was not abandoned. Pls.' Opp'n at 8-9. They also argue that they had no opportunity to object before the District destroyed their property. *Id.* at 9-11.

"The Fifth Amendment's Due Process Clause prohibits the District of Columbia from depriving persons of 'property without due process of law.'" *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (quoting U.S. Const. amend. V). To proceed on their Fifth Amendment claim, the Plaintiffs must allege that the District deprived them of a property interest and that "the procedures attendant upon that deprivation were constitutionally insufficient." *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). "[D]ue process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (internal quotation omitted). Courts evaluate "the risk of an erroneous deprivation" by the government actor and any "additional or substitute procedural safeguards." *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

8

So long as the Plaintiffs did not abandon their unattended property, they certainly had a property interest in it. As discussed above, the abandonment question is factual inquiry, and for now, the Court finds that the Plaintiffs have alleged sufficient facts to support their allegations.

The Plaintiffs have also alleged sufficient facts to suggest that they did not receive reasonable notice or an opportunity to object. The Supreme Court "has deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient." *Jones*, 547 U.S. at 226. The Plaintiffs allege that the notice that the District posts inaccurately assures readers that some property left at the site will be stored and will be available to be reclaimed. Am. Compl. ¶ 38. The Amended Complaint alleges that residents, including Ms. Braxton, who read the posted notices, did not expect the District to destroy all of their unattended belongings when they were gone during clearings. *Id.* ¶ 39. And the posted sign does not inform readers that property can be considered "abandoned" and destroyed on the spot. Pls.' Opp'n at 10. The District vigorously insists that it gives "reasonable" notice, which the District may be able to prove down the road. But for now, the Plaintiffs have alleged enough facts that the notice is insufficient.

As to municipality liability, the Plaintiffs have sufficiently alleged that the District has a custom of treating unattended property as abandoned and destroying it. And there is no dispute that it is the express policy of the District to post the allegedly misleading notice at issue and not to give residents, including the Plaintiffs, an opportunity to object to the destruction of their unattended property. Thus, the Plaintiffs have adequately stated their Fifth Amendment claim against the District.

**D. Mayor Bowser and Deputy Mayor Chung Will Be Dismissed from This Lawsuit**

The Plaintiffs sued Mayor Bowser in her official capacity and Deputy Mayor Chung in both her official and individual capacities. Am. Compl. ¶¶ 17-18. These officials insist they are not proper parties to the case. Defs.' Mem. at 19.

A suit against a District of Columbia official in her official capacity is "equivalent to a suit against the municipality itself." *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). So D.C. courts routinely dismiss claims against individuals named in their official capacity as "redundant and an inefficient use of judicial resources." *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 49 (D.D.C. 2005). The Plaintiffs argue that the Court should not dismiss Mayor Bowser and Deputy Mayor Chung because they are District policymakers. But that would also be true of the mine-run of cases brought against the District and its senior leaders. What's more, the Plaintiffs' claims against the District are identical to their claims against Mayor Bowser and Deputy Mayor Chung. The Court will thus dismiss the Amended Complaint as to Mayor Bowser and Deputy Mayor Chung in their official capacities.

The Plaintiffs may sue Deputy Mayor Chung in her individual capacity only if they allege that she "was directly responsible for the constitutional deprivation or that she gave 'authorization or approval of such misconduct.'" *Jefferies v. District of Columbia*, 917 F. Supp. 2d 10, 25 (D.D.C. 2013) (quoting *Ekwem v. Fenty*, 66 F. Supp. 2d 71, 76 (D.D.C. 2009)). The Amended Complaint alleges that she "oversees the operation of the District's homeless encampment clearing program and directs the administration of DHS's homeless encampment clearing policies and operations." Am. Compl. ¶ 18. And then without factual support or citation to an exhibit, the Plaintiffs baldly assert that Deputy Mayor Chung "in her personal

capacity has implemented through direct or supervisory means a practice of systematically destroying unattended" property. *Id.* ¶ 114.

The Amended Complaint fails to allege that Deputy Mayor Chung was personally involved in any alleged constitutional violation. In short, the Complaint seeks to hold Deputy Mayor Chung personally liable under vicarious liability, which is barred by Section 1983. *See Int'l Action Ctr. v. United States*, 365 F.3d 20, 27 (D.C. Cir. 2004). The Plaintiffs do not allege that Deputy Mayor Chung destroyed unattended property, promulgated an unconstitutional official policy, or encouraged employees to ignore the constitutional rights of residents like the Plaintiffs. Even if they prove at trial that the District has a custom of destroying unabandoned property, they have not alleged that Deputy Mayor Chung was personally involved in this custom. In sum, the Plaintiffs fail to allege that Deputy Mayor Chung was directly responsible for any constitutional deprivation, and so the Amended Complaint as to her in her individual capacity will also be dismissed.[2]

---

[2] It appears that Ms. Chung may no longer be Deputy Mayor. *See* Peter Jamison & Fenit Nirappil, *Second Bowser cabinet official steps down in less than a week*, The Washington Post (September 20, 2018) https://www.washingtonpost.com/local/dc-politics/second-bowser-cabinet-official-steps-down-in-less-than-a-week/2018/09/20/b767165a-bcec-11e8-be70-52bd11fe18af_story.html?utm_term=.ba440fe56548. Because the Court will dismiss the Amended Complaint as to her for the reasons above, it need not consider the impact of such a change in personnel.

## IV. CONCLUSION

For all these reasons, it is hereby

**ORDERED** that the Defendants' Motion to Dismiss is DENIED as to the District of Columbia and GRANTED as to Mayor Bowser and Deputy Mayor Chung; and it is

**ORDERED** that the Plaintiffs' Complaint as to Mayor Bowser and Deputy Mayor Chung is DISMISSED.

**SO ORDERED**.

Dated: November 27, 2018　　　　　　　　　　　　TREVOR N. McFADDEN, U.S.D.J.