**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SHANEL PROCTOR *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 18-701 (TNM) |
| | ) | |
| DISTRICT OF COLUMBIA, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs, by and through their undersigned counsel, respectfully move this Court for summary judgment on Count III of Plaintiffs' Third Amended Complaint, which seeks injunctive relief against Defendant, the District of Columbia (the "District"). *See* Fed. R. Civ. P. 56. As set forth in the accompanying memorandum of points and authorities, summary judgment is appropriate because Defendant's December 13, 2019 Protocol for the Disposition of Property Found on Public Space and Outreach to Displaced Persons ("2019 Protocol") is facially unconstitutional as a matter of law under the Fourth and Fifth Amendments. The 2019 Protocol constitutes the District's official municipal policy, for which they are liable under 42 U.S.C. § 1983. A proposed order is attached.

Dated: April 17, 2020

Respectfully submitted,

/s/ *Victor D. Ban*

Sarah L. Wilson (D.C. Bar No. 443350)
Ross A. Demain (D.C. Bar. No. 995043)
Jon-Michael Dougherty (D.C. Bar No. 1032660)
Victor D. Ban (D.C. Bar No. 1027211)
Nicholas Pastan (D.C. Bar No. 240966)
Eric Chung (CA Bar No. 319932)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001-4956
(202) 662-6000

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHANEL PROCTOR *et al.*, | ) |
|  | ) |
| *Plaintiffs,* | ) Civil Action No. 18-701 (TNM) |
|  | ) |
| *v.* | ) |
|  | ) |
| DISTRICT OF COLUMBIA, | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

Sarah L. Wilson (D.C. Bar No. 443350)
Ross A. Demain (D.C. Bar. No. 995043)
Jon-Michael Dougherty (D.C. Bar No. 1032660)
Victor D. Ban (D.C. Bar No. 1027211)
Nicholas Pastan (D.C. Bar No. 240966)
Eric Chung (CA Bar No. 319932)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001-4956
(202) 662-6000

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ....................................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

I.      The District's 2019 Protocol Violates the Fourth Amendment. ........................................ 5

II.     The District's 2019 Protocol Violates the Fifth Amendment. ........................................... 13

III.    The District's Policy of Destroying Unattended Property Under the Protocol Is
        Actionable Under Section 1983. ........................................................................................ 19

CONCLUSION ............................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allinder v. State of Ohio*,
808 F.2d 1180 (6th Cir. 1987) ......................................................................................8

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................................................................5

*Arrington v. United States*,
473 F.3d 329 (D.C. Cir. 2006)........................................................................................5

*\*Baker v. District of Columbia*,
326 F.3d 1302 (D.C. Cir. 2003)...............................................................................19, 20

*Bd. of Regents of Univ. of Wash. v. E.P.A.*,
86 F.3d 1214 (D.C. Cir. 1996)......................................................................................15

*Brown v. Muhlenberg Twp.*,
269 F.3d 205 (3d Cir. 2001) ...........................................................................................7

*Calero-Toledo v. Pearson Yacht Leasing Co.*,
416 U.S. 663 (1974)......................................................................................................17

*Chandler v. Miller*,
520 U.S. 305 (1997)..........................................................................................11, 12, 13

*\*City of Los Angeles v. Patel*,
135 S. Ct. 2443 (2015).........................................................................................6, 7, 14

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992) .....................................................................................................19

*Connick v. Thompson*,
563 U.S. 51 (2011)........................................................................................................19

*Daskalea v. Wash. Humane Soc'y*,
480 F. Supp. 2d 16 (D.D.C. 2007) ...............................................................................14

*Delaware v. Prouse*,
440 U.S. 648 (1976) .......................................................................................................6

*Ferguson v. City of Charleston*,
532 U.S. 67 (2001)........................................................................................................10

*Hudson v. Palmer*,
  468 U.S. 517 (1984)................................................................................18

*Illinois v. Krull*,
  480 U.S. 340 (1987)..............................................................................6, 8

*Joint Anti-Fascist Comm. v. McGrath*,
  341 U.S. 123 (1951) ............................................................................6, 8

*Kincaid v. City of Fresno*,
  No. 1:06-cv-1445 OWW SMS, 2006 WL 3542732 (E.D. Cal. Dec. 8, 2006) ...................8, 16

*Lavan v. City of Los Angeles*,
  693 F.3d 1022 (9th Cir. 2012) .........................................................7, 9, 16

*Marshall v. Barlow's, Inc.*,
  436 U.S. 307 (1978)..............................................................................4, 8

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)............................................................................13, 14

*Matthias v. Bingley*,
  906 F.2d 1047 (5th Cir. 1990) .................................................15, 16, 17, 18

*Miango v. Democratic Republic of the Congo*,
  243 F. Supp. 3d 113 (D.D.C. 2017) ..........................................................20

*Monell v. Dept. of Soc. Servs.*,
  436 U.S. 658 (1978) ..............................................................................19

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..........................................................................10, 14

*Proctor v. District of Columbia*,
  310 F. Supp. 3d 107 (D.D.C. 2018) .......................................................7, 11

*Proctor v. District of Columbia*,
  No. 1:18-CV-00701 (TNM), 2018 WL 6181739 (D.D.C. Nov. 27, 2018).............................7

*Propert v. District of Columbia*,
  948 F.2d 1327 (D.C. Cir. 1991) .........................................................14, 15

*Skinner v. Ry. Labor Execs.' Ass'n*,
  489 U.S. 602 (1989)..................................................................................5

*Soldal v. Cook Cty., Ill.*,
  506 U.S. 56 (1992)...............................................................................7, 9

*Sullivan v. City of Berkeley,*
    383 F. Supp. 3d 976 (N.D. Cal. 2019) ...................................................................15

*United States v. James Daniel Good Real Prop.,*
    510 U.S. 43 (1993) ...........................................................................................9

*United States v. Montoya de Hernandez,*
    473 U.S. 531 (1985) .........................................................................................5

*United States v. Salerno,*
    481 U.S. 739 (1987) ........................................................................................14

*United States v. Thomas,*
    864 F.2d 843 (D.C. Cir. 1989) ...........................................................................7

*Wash. Legal Clinic for the Homeless v. Barry,*
    107 F.3d 32 (D.C. Cir. 1997) ......................................................................13, 15

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) .........................................................................................6

**Statutes**

42 U.S.C. § 1983 .................................................................................1, 5, 19, 20

**Other Authorities**

Fed. R. Civ. P. 56 .....................................................................................................5

U.S. Const. amend. IV ................................................................................... *passim*

U.S. Const. amend. V..................................................................................... *passim*

## <u>INTRODUCTION</u>

On December 13, 2019, the District adopted a revised encampment clearing protocol, which memorialized the District's practice of destroying homeless encampment residents' unattended property. That revised protocol is facially unconstitutional as a matter of law under the Fourth and Fifth Amendments—each of which provides a sufficient basis to enjoin this policy—and the Court should grant summary judgment in Plaintiffs' favor.

The 2019 Protocol violates the Fourth Amendment because it grants the District unbridled discretion to destroy unattended property of homeless encampment residents, regardless of whether that property meets any objective indicia of abandonment. As a matter of law, the District cannot adopt a policy that declares abandoned and authorizes the immediate destruction of all unattended property, no matter how much notice the District provides. In addition, such a harsh policy is not necessary to further any legitimate government interest.

The 2019 Protocol violates the Fifth Amendment because it authorizes the destruction of property without any meaningful notice or opportunity to be heard. The Protocol's notice requirements are not reasonably certain to inform residents that their belongings could be summarily destroyed, and the Protocol contains no safeguards to prevent such a total and irreversible deprivation of their property.

The Court should therefore grant Plaintiffs' cross-motion for summary judgment to declare unconstitutional and enjoin this official municipal policy. *See* 42 U.S.C. 1983.

## **FACTUAL BACKGROUND**

On December 13, 2019, the District abruptly amended the Protocol, which governs its practice of clearing personal property from sites it refers to as homeless encampments. Pls.' SUMF ¶ 3. For the preceding three years, the District had conducted encampment clearings,[1] which Plaintiffs challenge as unconstitutional, under a November 21, 2016 version of the Protocol. *Id.* ¶ 2.

The District explained that updating the Protocol was necessary in order to conform the operative Protocol's language to the District's actual encampment clearing practices. *Id.* ¶ 4. This admission is stunning not only because the District admits that its encampment clearing practices did not align with its written Protocol for years, but also because it reveals the District's puzzling decision to codify its unconstitutional practices rather than remedy them.

Instead of addressing the arbitrary and scarce enforcement of the District's already minimal and inadequate protections, the District did away with those protections altogether. The only provisions the 2019 Protocol maintains to prevent the destruction of unattended belongings is a requirement "to post notices/signs conspicuously throughout the immediate vicinity of the public spaces to be cleaned" fourteen days "prior to the planned action to conduct a cleanup," and an unenforceable promise to conduct informal outreach efforts to inform individuals about encampment clearings. 2019 Protocol at 4, 9 (Pastan Decl. Ex. 1); Pls.' SUMF ¶¶ 8, 17. The 2019 Protocol removes previous language declaring that a notice is invalid "[t]wenty-eight (28) days after it is posted" and restricts a previous requirement to provide a final notice "at least forty-eight (48) hours before" any clearing to apply only to a rescheduled clearing. 2016 Protocol

---

[1] "Encampment clearing(s)" refers to the removal and/or disposition of property, including personal property, from encampments by the District pursuant to the Protocol.

at 6 (Pastan Decl. Ex. 2); 2019 Protocol at 5 (Pastan Decl. Ex. 1). The 2019 Protocol also provides an exception for this 48-hour notice for an "Immediate Disposition," which has no notice requirements or protections. Pls.' SUMF ¶ 15.

The 2019 Protocol also removes a mandate that the District "shall not discard" unattended items of obvious value, including operational bicycles, functional tents, and identifications and replaces it with a statement that the District "will make reasonable efforts to collect and store" certain "Eligible Property" in plain sight, including items of "obvious importance" or "of apparent value." *Id.* ¶¶ 11, 13. The 2019 Protocol adds new language underscoring that it is has no obligation to store any item unless "requested to be stored by the property's owner by placement in such containers" before a clearing and that it "will not sort through piles or collections of belongings, including items inside tents or containers," to identify items eligible for storage. *Id.* ¶ 12.

But the amendments to the Protocol go even further, ultimately absolving the District of any responsibility to fulfill even these minimal requirements by adopting a new declaration in the 2019 Protocol that all unattended property is subject to immediate destruction. The 2019 Protocol adds the following text: "All property that property-owners intend to keep should be removed from the cleanup site prior to the posted cleanup time. Any property left on the cleanup site is subject to removal and immediate disposal." *Id.* ¶ 10. Additionally, the 2019 Protocol changes the notice requirements from "A statement that any items not removed by the cleanup deadline are subject to removal and disposal" to "Advisement that property left on site during the cleanup time may be immediately destroyed." *Id.* ¶ 7.

The 2019 Protocol includes several additional provisions that grant unlimited discretion to the District to decide what to destroy:

- "Advisement that some unattended, non-hazardous property may be stored, in the District's discretion, and information about how to retrieve any property taken to storage after a cleanup." *Id. ¶ 8.*

- "Outreach workers shall also make clear to individuals experiencing homelessness that the only way to be sure property is not disposed of during a cleanup is to move the property from the cleanup site before the specified cleanup time." *Id.*

- "Due to safety and other concerns, District officials will not sort through piles or collections of belongings, including items inside tents or containers, to identify Eligible Property. Only Eligible Property in plain sight, without manipulation, will be stored. Property-owners leave property on site during a cleanup at their own risk." *Id. ¶ 14.*

In short, rather than address the errors that plagued the implementation of the November 2016 Protocol, the District amended the Protocol to authorize wholesale destruction rather than storage of even valuable unattended property (e.g., clean tents, bikes, medications, identification documentation) and to grant officials unfettered discretion to determine what unattended belongings can be destroyed during a clearing. The 2019 Protocol heightens the constitutional infirmity of the already inadequate notice and storage opportunities by now declaring that no notice or storage, beyond posting one sign fourteen days before a clearing, is needed before the District exercises unbridled authority to summarily destroy its residents' possessions.

## <u>ARGUMENT</u>

Plaintiffs are entitled to summary judgment declaring unconstitutional the District's official municipal policy, as codified in its 2019 Protocol, and enjoining its implementation. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 325 (1978) (declaring that a statute was unconstitutional and enjoining the statute's enforcement accordingly).

4

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A dispute over a material fact is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Additionally, "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (quoting *Anderson*, 477 U.S. at 248).

There is no dispute about the express terms of the Protocol, as amended on December 13, 2019. These terms violate the Fourth Amendment, as explained in Part I, and Fifth Amendment, as explained in Part II, as a matter of law. The District is liable under 42 U.S.C. 1983 for adopting and enforcing this unconstitutional official municipal policy, as explained in Part III.

## I.      **The District's 2019 Protocol Violates the Fourth Amendment.**

The Protocol violates the Fourth Amendment because it grants District officials unlimited discretion to deem any and all unattended property during a clearing to be abandoned. It ignores the Fourth Amendment's protections for unattended property that is not abandoned, and it gives the District complete discretion to determine what property can be seized.

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The reasonableness of a search or seizure "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989) (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion

5

on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *Id.* (internal quotation marks omitted) (quoting *Delaware v. Prouse*, 440 U.S. 648, 654 (1976)).

Although many challenges involve an individual search or seizure, a person subject to a statute that authorizes unreasonable searches and seizures may bring a facial challenge under the Fourth Amendment "seeking a declaration that the statute is unconstitutional and an injunction barring its implementation." *Illinois v. Krull*, 480 U.S. 340, 354 (1987). To prevail on such a challenge, a plaintiff must show that "the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). The U.S. Supreme Court recently clarified that the standard must not be read literally; rather, the standard considers "only applications of the statute in which it actually authorizes or prohibits conduct." *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2451 (2015) (internal quotation marks omitted). The "proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *Id.*

The District's 2019 Protocol is unconstitutional because it authorizes the immediate destruction of unattended property protected by the Fourth Amendment, i.e., property that is not abandoned (even if unattended) or hazardous. Prior to the amendments, the Protocol required warning individuals that their unattended belongings may be subject to destruction during an encampment clearing and mandated the temporary storage of certain, nonhazardous property. 2016 Protocol at 4 (Pastan Decl. Ex. 2). The 2019 Protocol, by contrast, declares that all unattended belongings during a clearing *are* subject to immediate destruction and does not mandate storage of any property. Pls.' SUMF ¶ 10. These provisions are impermissible for two reasons: (1) they eviscerate Fourth Amendment protections for unattended property that is not

6

abandoned; and (2) they give the District unlimited discretion to determine what property can be seized, even when there is no indicia of abandonment.[2] Indeed, the 2019 Protocol would permit wholesale destruction of valuable property even in the presence of the resident.

The Protocol's declaration that all unattended property is subject to immediate destruction violates the Fourth Amendment's protections against the unreasonable seizure of unattended property that has not been abandoned. *Proctor v. District of Columbia*, 310 F. Supp. 3d 107, 114 (D.D.C. 2018) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001)); *see also Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61–62 (1992); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1024, 1027–31 (9th Cir. 2012). The 2019 Protocol, like the previous Protocol, does not define abandonment or provide any guidance for District officials on how to determine whether property is abandoned. Pls.' SUMF ¶ 16. Abandonment is a quintessentially factual inquiry, requiring objective determination of the "intent of the person who is alleged to have abandoned" the property, based on "words spoken, acts done, and other objective facts." *Proctor v. District of Columbia*, No. 1:18-CV-00701 (TNM), 2018 WL 6181739, at *3 (D.D.C. Nov. 27, 2018) (citing *United States v. Thomas*, 864 F.2d 843, 845–46 (D.C. Cir. 1989)). The District cannot simply avoid its responsibilities under the Fourth Amendment to make an abandonment determination by declaring that all unattended property is abandoned if not removed by the time of a clearing.

---

[2] This is also not a case where "there is substantial ambiguity as to what conduct a statute authorizes." *Patel*, 135 S. Ct. at 2451. "Where a statute consists of extraordinarily elastic categories, it may be impossible to tell whether and to what extent it deviates from the requirements of the Fourth Amendment." *Id.* (internal quotation marks omitted). There are no elastic categories here: under the express terms of the Protocol, the District can destroy any unattended property during an encampment clearing.

The 2019 Protocol states "that property left on site during the cleanup time may be immediately destroyed."[3] Pls.' SUMF ¶ 7. The District's adoption of a policy that all unattended property loses its Fourth Amendment protections, or that all unattended property is automatically abandoned as of the beginning of a clearing, has no legal justification. *See Kincaid v. City of Fresno*, No. 1:06-cv-1445 OWW SMS, 2006 WL 3542732, at *36 (E.D. Cal. Dec. 8, 2006).

The Protocol is indistinguishable from facts in *Kincaid*. There, the city had "attempted to justify its policies and practices by its rule that the property of the homeless that it seizes and destroys is 'abandoned' and is therefore 'trash.'" *Id.* Effectively, the city's "rule" was that "if a homeless person is not literally beside his or her property laying claim to it during a sweep, then the City [may] deem[] that property to be abandoned, making the property 'trash,' which is then destroyed." *Id.* The *Kincaid* Court held that "[t]here is no legal justification for this rule which is demeaning as it places no value on the homeless' property and is not honest because the 'rule' purports to transmogrify obviously valuable property into trash." *Id.*

The Protocol's Removal and Storage of Property provisions also violate the Fourth Amendment because they grant District officials unlimited discretion to determine what is abandoned during a clearing. *See, e.g.*, *Allinder v. State of Ohio*, 808 F.2d 1180, 1188 (6th Cir. 1987) (statute unconstitutional where it "provide[d] too much discretion" to inspector); *Marshall*, 436 U.S. at 323 (statute unconstitutional where its grant of authority "to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search"); *Krull*, 480 U.S. at 359

---

[3] The Protocol repeats that broad discretion through several additional provisions declaring that individuals leave any and all property at their own risk. Further, although the previous Protocol required the District to store certain valuable belongings, the 2019 Protocol has no such requirement. Rather, under the 2019 Protocol, the District reserves all discretion to decide what, if anything, to store.

(assuming Illinois Supreme Court correctly concluded "the statute failed to pass constitutional muster solely because the statute vested State officials with too much discretion to decide who, when, and how long to search") (internal quotations omitted).

Under the 2019 Protocol, District officials are empowered to destroy encampment residents' most valuable or obviously not abandoned belongings (e.g., if they told outreach workers they still wanted their property, or if they left a sign indicating they still wanted their belongings) with no recourse. At most, the 2019 Protocol promises that District officials "will make reasonable efforts to collect and store" certain items only if those items are sitting in plain sight on the street. Pls.' SUMF ¶ 13. The same District officials have full discretion under the Protocol to determine when "reasonable efforts" have been made.

No amount of notice and outreach can cure the Protocol's unconstitutional authorization of District officials to immediately destroy belongings protected by the Fourth Amendment with unlimited discretion. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 49–50 (1993) (quoting *Soldal*, 506 U.S. at 70) ("[T]he seizure of property implicates two 'explicit textual source[s] of constitutional protection,' the Fourth Amendment and the Fifth. The proper question is not which Amendment controls but whether either Amendment is violated."); *Lavan*, 693 F.3d at 1030 ("[B]y seizing and destroying Appellees' unabandoned legal papers, shelters, and personal effects, the City meaningfully interfered with Appellees' possessory interests in that property. No more is necessary to trigger the Fourth Amendment's reasonableness requirement.").

Even assuming sufficient notice and outreach could cure such deficiencies (and they cannot), the District's notice and outreach requirements are wholly inadequate to do so. The Protocol's notice and outreach provisions require signs to be posted fourteen days before a

9

standard disposition, signs to be updated within 48 hours if a standard disposition is rescheduled, and in-person outreach to make clear that the only way for individuals to keep their belongings is to remove them prior to the clearing.[4] 2019 Protocol at 5 (Pastan Decl. Ex. 1). These requirements are not reasonably certain to ensure that property owners receive actual notice of an encampment clearing or its consequences.

Homeless individuals are not always present at an encampment site, cannot comprehend the District's written notice, and have reasonable obligations that prevent them from being able to move their belongings in time. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) (Constitutional Due Process requires a state to issue notice that is "reasonably calculated, under all the circumstances" before it may deprive a citizen of her property); Padgett Decl. Ex. 1, Dkt. 102-2 at 13–17; Padgett Dep. 66:22–71:10 (Pastan Decl. Ex. 7). District officials themselves have confirmed that the Protocol has not prevented notices from being vague and ambiguous, Pls.' SUMF ¶ 19 nor has it ensured that outreach is consistent or targeted at every homeless individual, *id.* ¶ 20.

The Protocol's departure from the Fourth Amendment is not justified by any legitimate government interest. "In looking to the programmatic purpose," a court "consider[s] all the available evidence in order to determine the relevant primary purpose." *Ferguson v. City of Charleston*, 532 U.S. 67, 81 (2001). The Protocol's stated purpose is to establish proper procedures for discarding and protecting personal property and to help homeless individuals find housing and address other needs. 2019 Protocol at 1 (Pastan Decl. Ex. 1). The District also claims that the Protocol is intended to "address health and safety issues" and maintain clean public spaces. *See* Dkt. 99-1, Def.'s SUMF #3. Even assuming these interests are legitimate, they

---

[4] There are no specified procedures or protections for an immediate disposition.

cannot save this Protocol because the record is clear that the authorization of immediate destruction of all unattended property does not further them.

*First*, authorizing the destruction of all unattended property is antithetical to the goal of establishing procedures for the proper discarding and protecting of personal property. If the Protocol were aimed at serving this interest, it would provide guidelines on how to sort the property found on public space, require documentation of what is destroyed versus stored, and heed "the reality of residents' lives, which often requires that residents leave their belongings unattended for extended periods of time." Padgett Decl. Ex. 1, Dkt. 102-2 at 11.

But the amendments to the Protocol do nothing to address the District's preparation of only "terse and often cryptic cleanup reports, many of which do not state whether the District had indicators of abandonment beyond the simple fact that property was unattended." *Proctor*, 310 F. Supp. 3d at 115 n.4 (citing to a number of the District's clearing logs); Jeong-Olson Dep. 97:18–20 (Pastan Decl. Ex. 5) ("So the item is abandoned or not is not the decision-making point for me as an encampment coordinator."); *see also* Williams Dep. 42:10–13, 43:21–45:3 (Pastan Decl. Ex. 9) (noting that abandonment determinations are not documented). Rather, the 2019 Protocol clearly states that the District will not sort belongings to identify items of value. 2019 Protocol at 8 (Pastan Decl. Ex. 1) ("District officials will not sort through piles or collections of belongings"). Because the Protocol's focus is on empowering District officials to dispose of property rather than establishing safeguards for the protection of property, the District cannot rely on this purpose to depart from Fourth Amendment requirements.

*Second*, a broad authorization to destroy all unattended property is not "well designed" to help homeless individuals find housing or address other needs. *Chandler v. Miller*, 520 U.S. 305, 319–20 (1997). The District has admitted that the Protocol's encampment clearing procedures

are not intended to help people secure housing. Pls.' SUMF ¶ 18. Additionally, Dr. Padgett's expert report and testimony from District witnesses establish that the Protocol's terms are "inconsistent with a policy that supports encampment residents and their transition to affordable housing." Padgett Decl. Ex. 1, Dkt. 102-2 at 10, 18. The District's interest in providing housing to individuals experiencing homelessness cannot justify the Protocol's unconstitutional destruction of encampment residents' property.

*Third*, any legitimate interest the District has to manage health and safety risks cannot be used as pretext to grant itself unlimited discretion to destroy any and all belongings on public spaces, especially when the District has not presented "any indication of a concrete danger demanding departure from the Fourth Amendment's main rule." *Chandler*, 520 U.S. at 318–19. The District already has the ability to clear property that poses an imminent health or safety risk under its immediate disposition procedures. "Nothing in the record hints that the hazards [it] broadly describe[s] are real and not simply hypothetical" in the case of a standard disposition as well. *Id.* at 319.

The District points to "no evidence of a [health or safety] problem" requiring it to significantly intrude on Fourth Amendment rights in its execution of the standard disposition procedures of the Protocol, or that the standard disposition provisions of the Protocol were enacted "in response to any" such hazards. *Id.* at 319, 321–22. There is no reason the District cannot take "ordinary law enforcement methods" to address real health and safety risks" in the case of a scheduled clearing. *Id.* at 321.

Even recognizing that personal property on public space can present health and safety risks, the District must do more than simply allege an abstract, symbolic harm to justify such a

significant intrusion on Fourth Amendment rights. *Id.* at 322 (The "Fourth Amendment shields society against . . . state action" for "a symbol's sake.").

## II.     The District's 2019 Protocol Violates the Fifth Amendment.

The Protocol is unconstitutional under the Fifth Amendment because it authorizes total deprivation of Plaintiffs' property interests without providing sufficient notice or an opportunity to be heard. The risk of erroneous deprivation is significant given the 2019 Protocol's grant of total discretion to District officials to immediately destroy all unattended property during a clearing. The minimal notice required by the 2019 Protocol is hardly reasonably certain to ensure that all property owners will be informed before the destruction, and there is otherwise no opportunity to be heard before such destruction. The Protocol's previous procedures to store at least some property has been eviscerated and replaced in the 2019 Protocol with only a requirement that the District officials only make "reasonable efforts" to decide, at their discretion, what to store. Pls.' SUMF ¶13. Neither the pre-deprivation nor post-deprivation remedies are adequate to justify the minimal notice and complete lack of any meaningful opportunity to be heard. The 2019 Protocol fails to provide adequate procedural due process on its face.

"The Fifth Amendment's Due Process Clause prohibits the District of Columbia from depriving persons of 'property, without due process of law.'" *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) (quoting U.S. Const. amend. V). "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951)). Due process therefore "requires, at minimum, that the government provide notice and some kind of hearing before final deprivation of a property interest," and the notice provided must be

'reasonably certain to inform those affected.'" *Propert v. District of Columbia*, 948 F.2d 1327,

1331 (D.C. Cir. 1991) (quoting *Mullane*, 339 U.S. at 315).

"The precise form of notice and the precise kind of hearing required depends upon a

balancing of the . . . *Mathews* factors: (1) the private interest affected by the government action;

(2) the risk of erroneous deprivation and the value of additional safeguards; and (3) the

government's interest, including the fiscal and financial burdens that additional or substitute

procedural requirements would entail." *Id.* at 1332. A plaintiff can raise a facial challenge under

the Fifth Amendment to a government policy that lacks such "procedural" due process. *See*

*United States v. Salerno*, 481 U.S. 739, 745–46 (1987); *Daskalea v. Wash. Humane Soc'y*, 480 F.

Supp. 2d 16, 34–35 (D.D.C. 2007).[5]

As discussed *supra*, the only notice required by the 2019 Protocol before all of an

encampment residents' property may be destroyed are signs posted fourteen days before a

clearing. 2019 Protocol at 5 (Pastan Decl. Ex. 1). Although the Protocol promises outreach

efforts, there are no guidelines regarding the content of such outreach or requirements for how

much outreach is sufficient prior to destruction. Pls.' SUMF ¶ 20. The Protocol also does not

require any procedures beyond "reasonable efforts" to store property at the District's discretion

or afford property owners any opportunity to be heard before destruction. Pls.' SUMF ¶ 13.

Applying the *Mathews* balancing test, the 2019 Protocol lacks procedural due process because it

authorizes significant and irreversible deprivation of property without sufficient notice or a

---

[5] In *Salerno*, the U.S. Supreme Court applied the standard that to prevail on a facial challenge "no set of circumstances exists under which the Act would be valid." 481 U.S. at 745. As discussed *supra* Part I, the Court recently clarified that this standard must consider "only applications of the statute in which it actually authorizes or prohibits conduct," not all possible conduct for which the statute would be irrelevant. *Patel*, 135 S. Ct. at 2451 (expressly quoting and clarifying the standard stated in *Salerno*).

reasonable opportunity to be heard. A facial challenge is appropriate because this flaw applies to every application of the 2019 Protocol—that is, every instance in which unattended but not abandoned property is destroyed.

The District rightly conceded in its motion for summary judgment, Dkt. No. 99 (quoting *Sullivan v. City of Berkeley*, 383 F. Supp. 3d 976, 987 (N.D. Cal. 2019)), that Plaintiffs have a protected property interest and waived any argument about the administrative burdens of providing additional or substitute procedural requirements. *See Bd. of Regents of Univ. of Wash. v. E.P.A.*, 86 F.3d 1214, 1221 (D.C. Cir. 1996). Plaintiffs have a protected property interest in their belongings under D.C. law, *see Wash. Legal Clinic for the Homeless*, 107 F.3d at 36, and the District has failed to show any additional, material burdens to providing a more adequate process, *see Propert*, 948 F.2d at 1335.[6] The primary question is therefore whether the District's Protocol sufficiently guards against the risk of erroneous deprivation so as not to require more notice or an opportunity to be heard. It does not.

In order to determine whether a city's ordinance establishing procedures for the destruction of personal property creates a high risk of erroneous deprivation, a court considers (1) whether there are sufficient notice requirements and procedures to ensure that all potential property owners are informed before destruction of seized property; (2) whether there are guidelines to conduct a "good faith effort" of locating property owners; and (3) whether there are any additional procedural safeguards before destruction. *Matthias v. Bingley*, 906 F.2d 1047, 1051–53 (5th Cir.), *opinion modified on denial of reh'g*, 915 F.2d 946 (5th Cir. 1990).

---

[6] The District has indicated that it has the ability and resources to store more unattended property. Pls.' SUMF ¶ 21.

The Protocol fails in each regard. *See Lavan*, 693 F.3d at 1031–33 (finding a Due Process violation when the city "failed utterly to provide any meaningful opportunity to be heard before or after it seized and destroyed property belonging to" a group of homeless individuals); *Kincaid*, 2006 WL 3542732, at *38 ("The City's process, or lack thereof, creates not just the risk, but the certainty of erroneous deprivation. The City could reasonably provide a more effective process that would reduce the likelihood of erroneous deprivation.").

*First*, the Protocol's requirements to post signs and conduct general outreach at most codifies a good faith effort to notify individuals in the surrounding area of a clearing, but there are no requirements for any systematic notification to reach a broader population of potential "lawful" property owners and to ensure that such owners are actually notified. *See Matthias*, 906 F.2d at 1052 ("City Ordinance 34-31 creates a high risk of erroneous deprivation because it instructs police officers to notify only 'lawful owners' of property in police custody. It does not instruct officers to notify other persons with colorable claims to the property.") (emphasis in original); *id.* ("City Ordinance 34-31 creates a high risk of erroneous deprivation because it does not require notification but instead only requires officers to make a 'good faith effort' to identify, locate, and notify 'lawful owners.'") (emphasis in original).

As discussed *supra*, the District's Protocol fails to address the fact that many signs are misleading and confusing to encampment residents, and offers no protections to ensure a reasonable certainty that encampment residents are notified before a clearing either through notice or outreach efforts. Pls.' SUMF ¶¶ 19–20. Moreover, the reasonableness of the District's signage must be assessed in the context of the affected population and the fact that the District conducts nearly a hundred clearings a year (nearly one every three days); individuals experiencing homelessness are focused on meeting daily needs for survival, may be less likely to

be able to read and understand the District's signage, and cannot be expected to read innocuous-looking signs all over the city to determine whether their belongings are subject to destruction. *See* Padgett Decl. Ex. 1, Dkt. 102-2 at 13–16.

*Second*, there are no guidelines under the Protocol to determine when District officials have completed adequate notice or outreach procedures, or how officials can determine whether property is abandoned, hazardous, or otherwise appropriate for destruction. *See Matthias*, 906 F.2d at 1052 ("City Ordinance 34-31 creates a high risk of erroneous deprivation because it neither establishes nor incorporates any guidelines for satisfying its 'good faith' requirement or for identifying and locating 'lawful owners.' The ordinance allows each officer to decide when she has satisfied the good faith requirement. Nothing in the system checks the officer's determination that she cannot notify the owner or need not notify persons with colorable claims.").

Beyond the signage requirements, the 2019 Protocol affords District officials full discretion to determine when it has conducted sufficient notice, if and how they conduct any outreach, and when unattended property at a clearing has been abandoned. Pls.' SUMF ¶ 20. There is no limitation, for instance, that District officials can only immediately destroy property that clearly poses a health or safety risk.[7] *Cf. Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 (1974) ("[D]ue process is not denied when postponement of notice and hearing is necessary to protect the public from contaminated food; from a bank failure; or from misbranded drugs; or to aid the collection of taxes; or the war effort." (citations omitted)).

---

[7] The District already has discretion to immediately destroy such property under the "Immediate Disposition" procedures. The "Standard Disposition" procedures authorize District officials to destroy *any* property during a clearing as long as the District has posted notices and made informal outreach efforts fourteen days before the clearing. *Compare* 2019 Protocol at 4–9, *with id.* at 9–10 (Pastan Decl. Ex. 1).

Nor are there any procedural safeguards to give more time or a hearing for individuals who want to claim those belongings (e.g., they were absent because they were at work or in the case of an emergency). *Matthias*, 906 F.2d at 1052–53 ("Additional procedural safeguards such as requiring officers to notify all persons with colorable claims to the property, including those from whom the officers seize the property, would give those persons an opportunity to establish their property interests and to recover their property before the City disposes of it.").

The Protocol only provides fourteen days for homeless persons to totally evacuate, which requires individuals with nowhere else to go to move their entire living spaces, and still leaves room for the District to determine that an "emergency or other circumstance" could exist to require "the immediate removal of the property." 2019 Protocol at 6 (Pastan Decl. Ex. 1). The 2019 Protocol also removes previous language providing an additional safeguard in the case of a stale notice: "Twenty-eight (28) days after it is posted, the Initial Notice becomes invalid and must be reposted to effectuate another cleanup." 2016 Protocol at 6 (Pastan Decl. Ex. 2). Now, in the case of a rescheduled cleanup, the District can essentially change the cleanup date with only 48 hours of notice. The 2019 Protocol also provides an exception for this 48-hour notice for immediate dispositions presumably involving property that clearly poses a health or safety risk, a determination made at the complete discretion of District officials.

*Third*, post-deprivation remedies cannot and do not save these deficient practices. An "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause" if pre-deprivation process is "impracticable," and "a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Here, the deprivation of property is intentional, but it is not unauthorized. Rather, the Protocol expressly authorizes the immediate destruction of all unattended property. Additionally, as discussed above, pre-deprivation process is not impracticable: the District could provide clearer guidance both to its District officials and to homeless individuals about what belongings will be stored or destroyed. The District has conceded that it is capable of storing more items. Pls.' SUMF ¶ 21 . But even if post-deprivation remedies are relevant here, they are neither meaningful nor adequate. The Protocol does not provide any guarantee that any items will be stored, leaving those decisions to District officials with subjective guidelines prone to arbitrary decision-making. Indeed, the record shows that the District rarely stores any belongings. Pls.' SUMF ¶ 22.

### III.  The District's Policy of Destroying Unattended Property Under the Protocol Is Actionable Under Section 1983.

Plaintiffs have demonstrated that the District's official municipal policy, as codified in the December 13, 2019 Protocol, granting District officials unlimited discretion to destroy all unattended belongings during an encampment clearing, violates the Fourth and Fifth Amendments of the U.S. Constitution.

A municipal government is liable under Section 1983 for any actions taken pursuant to official municipal policy that causes injury. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692 (1978)). To demonstrate municipal liability, a plaintiff must satisfy a two-pronged test. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 124 (1992)). First, the plaintiff must state a claim for the predicate constitutional violation. *Id.* at 1306. Second, the plaintiff must demonstrate the policy or custom that caused the constitutional violation. *Id.* (citing *Monell*, 436 U.S. at 694). The policy must have an "affirmative link" to the violation such

that it is the "moving force" behind the constitutional violation. *Id.*; *accord Miango v. Democratic Republic of the Congo*, 243 F. Supp. 3d 113, 125–26 (D.D.C. 2017). The actionable municipal policy may be established, among other things, by "the explicit setting of a policy by the government that violates the Constitution." *Baker*, 326 F.3d at 1306.

Plaintiffs have satisfied that burden here. As explained above, Plaintiffs have pointed to undisputed facts that state a claim for two predicate constitutional violations—of the Fourth and Fifth Amendments—caused by the District's encampment clearing policy or custom. Each of those violations has an "affirmative link" to "the explicit setting of a policy" in the form of the 2019 Protocol. The District is therefore liable under Section 1983 for the adoption and implementation of the facially unconstitutional 2019 Protocol.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Cross-Motion for Summary Judgment declaring the District's Protocol unconstitutional and enjoining its enforcement.

Dated: April 17, 2020                              Respectfully submitted,

                                                   */s/ Victor D. Ban*

                                                   Sarah L. Wilson (D.C. Bar No. 443350)
                                                   Ross A. Demain (D.C. Bar. No. 995043)
                                                   Jon-Michael Dougherty (D.C. Bar No. 1032660)
                                                   Victor D. Ban (D.C. Bar No. 1027211)
                                                   Nicholas Pastan (D.C. Bar No. 240966)
                                                   Eric Chung (CA Bar No. 319932)
                                                   COVINGTON & BURLING LLP
                                                   One CityCenter
                                                   850 Tenth St., N.W.
                                                   Washington, D.C. 20001-4956
                                                   (202) 662-6000